**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **ROSALBA SUAREZ and SILVIA VANESSA MORENO,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **EP-22-CV-00344-DCG** |
| **BRANDON HELVIE and NEW PRIME INC.,** | § § § | |
| **Defendants.** | § § | |

## <u>REPORT AND RECOMMENDATION</u>

Before the Court is Defendants Brandon Helvie and New Prime Inc.'s ("Defendants") "Motion for Partial Summary Judgment on Plaintiffs' Claims for Gross Negligence" (ECF No. 36), filed on November 1, 2023. On the same day, the Honorable Senior United States District Judge David Guaderrama referred the motion to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C to the Local Rules of the Western District of Texas. For the reasons set forth below, the Court **RECOMMENDS** that Defendants' Motion for Partial Summary Judgment be **GRANTED**.

## I.    BACKGROUND

This case stems from a car accident between Plaintiffs Rosalba Suarez ("Suarez") and Silvia Vanessa Moreno ("Moreno") (collectively, "Plaintiffs") and Defendant Brandon Helvie ("Helvie"). Pls.' Original Compl. ¶ 5.4 [hereinafter "Compl."], ECF No. 1. At the time of the accident, Helvie was employed as a driver for Defendant New Prime Inc. ("New Prime"). *Id.* at ¶ 5.3. Plaintiffs were waiting at a stoplight "facing westbound at the intersection of 500 Vinton

and 7200 South Desert in El Paso County, Texas." *Id.* at ¶ 5.1.  Helvie, who was "towing a commercial trailer owned and controlled by New Prime," was travelling southbound on South Desert and attempted to make a left turn onto Vinton going eastbound. *Id.* at ¶ 5.2.  The trailer hit Plaintiffs' car. *See* Tex. Peace Officer's Crash Report Ex. C [hereinafter "Report"], ECF No. 36-3.  According to the police report, Plaintiffs' car "sustained damaged [sic] on [the] front left and front left quarter of the vehicle." *Id.* at 2.  Helvie was issued a citation for an unsafe lane change. *Id.*; Def. Helvie's Objs. and Answers Pls.' First Set Interrogs. Ex. D, at 4 [hereinafter "Helvie Answers"], ECF No. 36-4.

Plaintiffs filed this case, seeking damages from Helvie for negligence and gross negligence and from New Prime for negligence, vicarious liability, and gross negligence.  Compl. ¶¶ 6.1–7.9. Defendants filed the current motion for partial summary judgment, asserting that neither Helvie nor New Prime's actions meet the standard for gross negligence.  Defs. Helvie and New Prime's Mot. Partial Summ. J. Pls.' Claims Gross Negligence [hereinafter "Mot."], ECF No. 36.  Plaintiffs filed a motion for continuance, Pls.' Mot. Continuance Defs.' Mot. Partial Summ. J., ECF No. 39, which was denied by Judge Guaderrama, Order Den. Mot. Continuance, ECF No. 40.  Plaintiffs then filed their response, Pls.' Resp. Opp'n Defs.' Mot. Partial Summ. J. Pls.' Claims Gross Negligence [hereinafter "Resp."], ECF No. 41, on December 1, 2023.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material "if proof of its existence might affect the outcome of the case." *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020).  "There exists a 'genuine dispute' about a

material fact . . . when the evidence would allow a reasonable jury to return a verdict for the nonmovant." *Id.*

A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant carries that burden, the burden shifts to the nonmovant to show that a genuine issue exists. *Id.* at 323–25. The ultimate inquiry is whether the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In ruling on a motion for summary judgment, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). Courts, however, "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

### III.   DISCUSSION

#### A. Gross Negligence Claim Against Helvie

In their motion for partial summary judgment, Defendants argue that Helvie's action of "simply misjudg[ing] the space between his vehicle and Plaintiffs' vehicle" is not the kind of action that would qualify as gross negligence. Mot. 9. Defendants assert that "Texas law requires considerably more than minor impact with a stationary vehicle caused by a misjudgment in turning radius." *Id.* And, they argue, the subjective prong of the claim is not met, because there is no evidence that Helvie was aware of an extreme risk and proceeded anyway. *Id.*

In their response, Plaintiffs argue that in the accident, the trailer made contact with Plaintiffs' car and started to drag it backwards, creating an extreme risk to Plaintiffs. Resp. 2. Plaintiffs also argue that, since they honked their horn right before the collision occurred and

Helvie continued driving, Helvie was aware of and demonstrated "a complete disregard for the imminent danger" of the collision.  Resp. 5–6.

Jurisdiction here is based on diversity, so the Court applies the substantive law of Texas. Compl. ¶ 3.1; *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  Gross negligence claims in Texas have two elements:

> (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Almanza v. Navar*, 225 S.W.3d 14, 22 (Tex. App. 2005).  "Extreme risk" requires that there be a "likelihood of serious injury to the plaintiff."  *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).  "Actual, subjective awareness" requires that the defendant know of the peril, "but its acts or omissions demonstrate[] that it [does] not care."  *Marr v. Croxton*, No. SA-21-CV-00961-XR, 2022 WL 2346622, at *2 (W.D. Tex. June 29, 2022) (citation omitted).  "Conscious indifference" exists when "the defendant's act or omission is unjustifiable and likely to cause serious harm."  *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 654 (S.D. Tex. 2016). Evidence of simple negligence is not enough to prove either element of gross negligence.  *Garcia v. Zimmerman*, No. 1:21-CV-01063-SH, 2023 WL 5539654, at *3 (W.D. Tex. Aug. 28, 2023).

A driver's "failure to obey traffic laws . . . will not support a finding of gross negligence. . . .  Indeed, a driver's actions must be considerably more extreme, often involving multiple conscious acts or omissions, to support liability."  *Phillips*, 189 F. Supp. 3d at 656.  "A garden-variety vehicle collision . . . cannot form the basis of a gross negligence claim."  *Marr*, 2022 WL 2346622, at *3.  "[A]ggravating circumstances are required to transform an act of simple negligence into one of gross negligence."  *Rayner v. Dillon*, 501 S.W.3d 143, 151 (Tex. App. 2016).

For example, failing to see if a lane is clear before changing lanes also does not create "a likelihood of serious injury" and is not gross negligence. *Ochoa v. Mercer Transp. Co.*, No. 5:17-CV-1005-OLG, 2018 WL 7505640, at *2 (W.D. Tex. Dec. 10, 2018). However, when a tractor-trailer driver who repeatedly failed to keep up-to-date log books hit another car while changing lanes, a reasonable jury could have determined that the driver had driven in excess of his hours and was fatigued, and, as such, the jury's finding of gross negligence was supported by clear and convincing evidence. *Rayner*, 501 S.W.3d at 151–53.

In his answers to interrogatories, Helvie stated that he made the left-hand turn very slowly, going "perhaps 2 miles an hour" and "turn[ing] as wide as [he] could under the circumstances." Helvie Answers 8. Plaintiffs have not contradicted this testimony, as neither plaintiff recalled how fast Helvie was driving. Dep. Moreno Ex. B, at 29:13–30:8, ECF No. 41; Dep. Suarez Ex. A, at 34:25–35:1, ECF No. 41. Helvie further stated that he thought he could make the turn. Helvie Answers 8. He also thought that there was no one behind Plaintiffs and that they had room to back up and avoid him as he turned. *Id.* Plaintiff Suarez, who was driving, testified that she did not know if she had room to back up or not. Dep. Suarez Ex. A, at 33:11–16. She thought Helvie did have room to make the turn. *Id.* at 31:8–13. Additionally, Plaintiffs both testified in their depositions that they thought the collision was an accident on Helvie's part. *Id.* at 33:17–22; Dep. Moreno Ex. B, at 30:14–18.

Even viewing all the facts in the light most favorable to Plaintiffs, Helvie's actions did not create "a likelihood of serious injury" and therefore did not constitute gross negligence. He waited until his light went green, Dep. Suarez Ex. A, at 48:10–12, and turned slowly. An attempt to make a left-hand turn, even if there does not appear to be a lot of room to do so safely, does not rise to the level of extreme risk. It is a simple traffic accident, like a failure to check one's mirrors before

changing lanes (indeed, Helvie was cited for an unsafe lane change, *see* Report 2).  Since the first prong of the gross negligence test has not been met, the Court recommends that the claim of gross negligence against Helvie be dismissed.

## B. Gross Negligence Claim Against New Prime

Defendants argue that there are no facts sufficient "to support gross negligence by New Prime."  Mot. 8.  Since "Helvie was a licensed and qualified commercial motor vehicle driver," they argue, Plaintiffs' claims that Helvie was unfit as a driver lack support.  *Id.*  They conclude that "Plaintiffs offer no evidence sufficient to meet the essential elements of a gross negligence claim against a corporate entity."  *Id.* at 9.  On the other hand, Plaintiffs argue that New Prime's decision to hire Helvie, although he had been in accidents in 2012 and 2019, "should raise concerns about the company's hiring and training practices."  Resp. 6–7.

A claim of gross negligence against a corporation can be sustained only if "the corporation itself (1) commits gross negligence, (2) authorized or ratified an agent's gross negligence, (3) was grossly negligent in hiring an unfit agent, or (4) committed gross negligence through the actions or inactions of a vice-principal."  *Phillips*, 189 F. Supp. 3d at 656.  Plaintiffs assert that New Prime was grossly negligent by hiring an unfit agent.  Compl. ¶ 7.9; Resp. 6–7.

Gross negligence by an employer who hires a commercial driver requires that "[t]he employer . . . be aware of the peril caused by its employee, but demonstrate by his [sic] acts or omissions that it does not care."  *Phillips*, 189 F. Supp. 3d at 658.  A failure "to inquire into or check the driver's driving record" is not enough to establish gross negligence.  *Id.*  "Courts in this Circuit have found that 'even when a driving check is conducted, those that come back clear or turn up convictions that do not speak to the driver's driving abilities are insufficient to raise an issue on gross negligence.'"  *DeHaven v. Singh*, No. 1:20-CV-977-RP, 2022 WL 1793523, at *4

(W.D. Tex. Mar. 21, 2022).   However, an employer may be liable for gross negligence if its employee has an "egregious driving record[]" and the employer does not address the issue.  *Id.* An example of a driving record that might allow a jury to find gross negligence on the part of the employer is when the employee "had been involved in three wrecks in less than six months and had accumulated numerous traffic convictions in recent years."  *Montemayor v. Heartland Transp., Inc.*, No. B-07-CV-151, 2008 WL 4777004, at *5 (S.D. Tex. Oct. 30, 2008).

In this case, there is no evidence that Helvie had an egregious driving record at the time of the accident.  He received one ticket, in 2012, prior to the accident that forms the basis of the current lawsuit.  Helvie Answers 4.  In its answers to interrogatories, New Prime confirmed that it hired Helvie on September 6, 2020.  Def. New Prime's Objs. and Answers Pls.' First Set Interrogs. Ex. E, at 3, ECF No. 36-5.  It was unaware of any traffic citations or tickets received by Helvie prior to his start at New Prime.  *Id.*  It was aware of only one traffic accident that Helvie had been involved in prior to being hired, an accident which occurred on May 6, 2019, in which only property was injured.  *Id.* at 3–4.  Helvie stated that this accident was caused when an auto body shop failed to replace his tire properly, and the tire came off.  Helvie Answers 4.  Helvie did not receive a ticket for this incident.  *Id.*

This uncontroverted testimony establishes that Helvie's driving record did not rise to the level of an egregious driving record when New Prime hired him.  He had only received one prior ticket—that New Prime was not aware of—eight years before being hired and was in one other accident where he was not at fault.  There is no evidence that New Prime engaged in an extreme risk by hiring Helvie and having him drive for them.  Therefore, the Court recommends that the claim of gross negligence against New Prime be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants Brandon Helvie and New Prime Inc.'s Motion for Partial Summary Judgment on Plaintiffs' Claims for Gross Negligence be **GRANTED.**

**SIGNED** this 8th day of December, 2023.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**